# UNITED STATES DISTRICT COURT
## Western District of Texas
### Austin Division

| | | |
|---|---|---|
| THOMAS DOUGHTY, individually and on behalf of the classes, | § § § | |
| Plaintiff, | § § | CA No.: 1:24-cv-01190-DII |
| v. | § § | |
| | § | Class Action |
| FREEDOM SOLAR SERVICES D/B/A BRIGHT SOLAR MARKETING, and FREEDOM FOREVER LLC, | § § § § | Jury Demanded |
| Defendants. | | |

### SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff, Thomas Doughty ("Plaintiff") files this second amended class action complaint against FREEDOM SOLAR SERVICES D/B/A BRIGHT SOLAR MARKETING, LLC ("Bright Solar") and FREEDOM FOREVER, LLC ("Freedom Forever") (collectively, "Defendants") and respectfully shows the Court as follows:

### PARTIES

1.      Plaintiff is, and at all times mentioned herein was, a citizen and resident of this District.

2.      Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

3.      Plaintiff is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

4.      Plaintiff is, and at all times mentioned herein was, a "purchaser" as defined by Tex.

Bus. & Com. Code § 302.001(3).

5.      Defendant Bright Solar is a California corporation with its principal address located at 43445 Business Park Drive, Suite 104, Temecula, CA 92590.

6.      Defendant Freedom Forever is a Delaware limited liability company with its principal address also located at 43445 Business Park Drive, Suite 110, Temecula, CA 92590.

7.      A related and affiliate company to Defendants named Bright Solar Marketing LLC, with its mailing address also located at 43445 Business Park Drive, Suite 110, Temecula, CA 92590, was previously the named principal defendant in this action. In its sworn discovery responses in this case, Bright Solar Marketing, LLC identified Defendant Bright Solar as the appropriate named defendant in this action based on Plaintiff's allegations.

8.      Based on undersigned counsel's investigation, Bright Solar and Freedom Solar operate as related, affiliated, parent and subsidiary, in concert with, and/or alter ego companies, and on each other's behalf and for each other's mutual benefit. They share offices, operate and hold themselves out to the public as a single and common enterprise, and share common officers, agents, and operations.

9.      Defendants are and at all times mentioned herein were, a "person" as defined by 47 U.S.C. § 153 (39).

10.      Defendants are and at all times mentioned herein were, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

11.      Defendants are and at all times mentioned herein were, a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5).

12.      Defendants, individually, jointly, and in concert with one another, participated in the illegal telemarketing by personally designing, approving, transmitting (either directly or

through persons on their behalf) and/or ratifying the calling campaigns alleged herein.

13.    At all times relevant hereto, Defendants have formulated, directed, controlled, had the authority or right to control, ratified, benefited from, intended to benefit from, or otherwise participated in the acts and practices set forth in this Second Amended Complaint.

14.    Defendants had direct, personal participation in and/or personally authorized or ratified the conduct that violates the TCPA, and which is complained about in this Complaint.

15.    Defendants "developed or authorized the policies and procedures that led to violations of the TCPA." *Cunningham v. Politi*, No. 4:18 -CV-00362-ALM-CAN, 2020 WL 1808239, at *5 (E.D. Tex. Jan. 26, 2020), report and recommendation adopted, No. 4:18-CV-362, 2020 WL 1703192 (E.D. Tex. Apr. 8, 2020); *Texas v. Am. Blastfax, Inc.*, 164 F.Supp.2d 892 (W.D.Tex.2001).

## JURISDICTION AND VENUE

16.    The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

17.    This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because they are so closely related to the federal claims that they form a single case or controversy.

18.    This Court has personal jurisdiction over Defendants because Defendants, or someone on Defendants' behalf, called Plaintiff, a resident of Texas, on his Texas residential telephone number, and Defendants, or persons on their behalf, made numerous calls to other residents of Texas on their respective residential telephone numbers.

19.    Defendants are aware that they are calling residents of Texas and dialing into the State of Texas because they are calling Texas area codes and promote the sale of their residential

solar power products and services to Texas residents to be installed at their residential homes. Defendants and/or their authorized service providing partners enter into contracts, and/or intend to enter into service contracts, for residential services and products with Texas residents to be used in Texas for Texas homes.  In doing so, Defendants have availed themselves to the jurisdiction of Texas because the products and services it promotes are marketed to and directed to residents in Texas, and the products and services are used and administered in residential homes in Texas. Defendants took these actions to establish contacts with, to conduct business in, and to facilitate activity with homeowners in the State of Texas.

20.    Venue is proper because the Plaintiff is a resident of this District and Defendants have had sufficient contacts in this State and District to subject them to personal jurisdiction. As set forth above, Defendants targeted residents of this District and made calls into this State.

## FACTUAL ALLEGATIONS

21.    This action arises out of Defendants' practice of making telemarketing sales calls to individuals who were placed on, or should have been placed on, Defendants' internal  Do-Not-Call lists (ie: individuals who requested to not be contacted), in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") and provisions of the Texas Business & Commerce Code.

22.    Defendants make calls to consumers after they request Defendants to stop calling them and to place their number on Defendants' Internal Do Not Call lists.

23.    Defendants' practices of willfully disregarding consumers' requests to be placed on Defendants' Internal DNC lists demonstrate an intentional and willful violation of the TCPA.

24.     Because Defendants continues to contact consumers after they request to no longer be contacted it demonstrates on-going and future harm, and the need for judicial intervention and judicial relief to enjoin Defendant's on-going violations.

## DEFENDANTS' TELEMARKETING CALLS DESPITE REPEATED STOP REQUESTS

25.     On April 11, 2023, a call from "Bright Solar" from (512) 615-2648 was placed to Plaintiff's personal residential telephone number ending in 7778. When Plaintiff spoke with the caller from this telephone number, the caller said he was calling from Bright Solar.

26.     On April 12, 2023, a call from Bright Solar from (512) 615-2636 was placed to Plaintiff's personal residential telephone number ending in 7778. When Plaintiff spoke with the caller from this telephone number, the caller said she was calling from Bright Solar.

27.     Plaintiff is the subscriber to his number ending in 7778. This number is used by Plaintiff for residential purposes and is considered by him to be a residential number.

28.     Plaintiff's full telephone number has already been provided directly to counsel for Defendants. It is not provided in this Second Amended Complaint, a public document, to prevent further unwanted and unauthorized calls to Plaintiff. Plaintiff's counsel also already provided Plaintiff's full telephone number directly to Defendants pre-suit prior to filing this action.

29.     On April 14, 2023, Plaintiff placed a call to Bright Solar at (512) 615-2636 at 11:16 a.m. to investigate who was calling him.

30.     When Plaintiff called the number back to see who was calling him, Bright Solar's agent or employee Rachael advised it was "Bright Solar" calling.

31.     Rachael asked Plaintiff if he was still interested in going solar, despite Plaintiff never having inquired about solar from Bright Solar.

32.    Rachael continued to attempt to convince Plaintiff to set an appointment, but Plaintiff advised he was out of town and would call back when he was ready in an attempt to identify the real name of the company calling and to determine who was behind the calls to his phone.

33.    Plaintiff is aware of at least an additional nineteen (19) calls that were either missed or declined between the April 14, 2023, call with Rachael and April 21, 2023. The inbound calling number for each call is reflected in the chart in paragraph 55 of this Second Amended Complaint below.

34.    Bright Solar's caller told Plaintiff that Bright Solar was calling from these numbers.

35.    Plaintiff has received call detail records from Bright Solar's vendor that confirms the inbound numbers used to call Plaintiff belonged to Bright Solar.

36.    On or about April 21, 2023, Plaintiff answered a call from Bright Solar calling from (512) 615-2636.  Plaintiff answered the call and said, "STOP CALLING," and then disconnected the call.

37.    Again, on or about April 21, 2023, at 1:40 p.m., Plaintiff received another call from Bright Solar, this time from (512) 615-2648. Plaintiff spoke with Aaron, who asked for "Frank."

38.    Plaintiff said he was "Frank," again in effort to further investigate who was actually calling him. Aaron asked if he was ready to set an appointment.  Plaintiff then asked Aaron for his company's name and if he could call Aaron back on the number he called from. Aaron again confirmed he was with Bright Solar and he would call Plaintiff back. Plaintiff advised Aaron that he receives too many calls and that he would call Aaron back *if* he was interested.

39.    An additional ten (10) calls were either missed or declined between April 21, 2023, and April 29, 2023. The calling number for each call is reflected in the chart in paragraph 55 of this Second Amended Complaint below. Bright Solar's caller told Plaintiff that Bright Solar was calling from these numbers.

40.    On or about April 29, 2023, Plaintiff received another call from Bright Solar from (512) 615-2636. He could not hear anyone on the line but again said "STOP CALLING" and disconnected the call.

41.    On or about May 1, 2023, Plaintiff received another call from Bright Solar from (512) 615-2636. He could not hear anyone on the line and again said "STOP CALLING" and disconnected the call.

42.    Later, or about May 1, 2023, Plaintiff made an outbound call to Bright Solar at (512) 615-2636 from a different cell phone number to further investigate the source of the calls and told Bright Solar to "Stop hounding me, stop calling."

43.    Again, on May 1, 2023, Plaintiff received another call from Bright Solar's representative Rachael from (512) 615-2636, looking for "Frank." Plaintiff told Rachael again to "STOP HOUNDING ME, STOP CALLING."

44.    On or around May 2, 2023, Plaintiff received a call from Bright Solar from (512) 615-2648. He could not hear anyone on the line and again said "STOP CALLING" and disconnected the call.

45.    On or around May 2, 2023, Plaintiff received a second call from Bright Solar from (512) 615-2648 within the same minute. Again, he could not hear anyone on the line, so he said, "STOP CALLING" and disconnected the call.

46.    *At least* an additional ninety-three (93) calls were either missed or declined between May 2, 2023, and January 6, 2024. The calling number for each call is reflected in the chart in paragraph 55 of this Second Amended Complaint below. Bright Solar's caller told Plaintiff that Bright Solar was calling from these numbers

47.    On or around January 6, 2024, Bright Solar called to set up an appointment at Plaintiff's Kempner address. Plaintiff acquiesced to further investigate and confirm the source of the calls. Bright Solar, however, cancelled the visit because they said could not install solar on modular homes.

48.    On or around January 8, 2024, Plaintiff made an outbound call to Bright Solar at (951) 234-0835 to try to get them to come out and further investigate who Bright Solar was making calls for – either Bright Solar only, or on behalf of or in association with another company. On this call, Bright Solar's agent stated that Freedom Forever would be the installer.

49.    Because Bright Solar continued to place telemarketing calls to Plaintiff despite his repeated stop requests it shows that Bright Solar chose to ignore or disregard Plaintiff's requests to no longer be contacted, Bright Solar's willful, knowing, and purposeful disregard for Plaintiff's wishes, its decision to willfully, knowingly, and intentionally break the TCPA rules designed to protect privacy for us all, and its knowing failure to have adequate Internal DNC rules, procedures, and safeguards that would have prevented further calls to Plaintiff.

50.    Defendants' failure to honor opt-out instructions by Plaintiff and the Class members is indicative of Defendants' failure to 1) maintain written policies and procedures regarding its telephone marketing; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

51.    Despite Plaintiff's multiple and repeated stop requests, Bright Solar continued to place calls to Plaintiff's phone, placing *at least* 138 calls to Plaintiff since its initial call on April 11, 2023, and approximately 100 calls after speaking directly with Bright Solar's live representative "Rachel" on May 1, 2023 and requesting that Bright Solar STOP.

52.    The content and purpose of the calls demonstrate that they were telephone solicitations, ie: for the purpose of encouraging, promoting and selling to Plaintiff solar panels for his home. On each of the calls that Plaintiff spoke with a live representative, the telemarketer stated that the purpose of the call was to sell and install solar panels for Plaintiff's home. Indeed, Defendant's telemarketers and sales agents would have no reason to call Plaintiff other than for the purpose of telephonic solicitation.

53.    Plaintiff's calls records show that each of the telemarketing calls reflected in paragraph 55 below were received by Plaintiff and transmitted to his cellular telephone.

54.    Bright Solar has admitted in discovery that it had no prior existing business relationship with Plaintiff.

55.    A chart identifying 137 telemarketing calls placed to Plaintiff by a telephone number associated with Defendants and for which the caller from the telephone number stated the call was from Bright Solar is below:

| Date | Time | From Phone # |
|---|---|---|
| 4/11/23 | 4:59 PM | (512) 615-2648 |
| 4/11/23 | 8:00 PM | (512) 615-2648 |
| 4/12/23 | 11:35 AM | (512) 615-2636 |
| 4/12/23 | 12:37 PM | (512) 615-2648 |
| 4/12/23 | 4:26 PM | (512) 615-2648 |
| 4/12/23 | 5:16 PM | (512) 615-2648 |
| 4/12/23 | 5:58 PM | (512) 615-2648 |
| 4/13/23 | 12:52 PM | (512) 615-2648 |

| 4/13/23 | 5:32 PM | (512) 615-2636 |
|---------|---------|----------------|
| 4/13/23 | 6:53 PM | (512) 615-2648 |
| 4/14/23 | 11:42 AM | (512) 615-2636 |
| 4/14/23 | 12:43 PM | (512) 615-2636 |
| 4/14/23 | 2:50 PM | (512) 615-2648 |
| 4/14/23 | 4:14 PM | (512) 615-2636 |
| 4/14/23 | 7:17 PM | (512) 615-2648 |
| 4/15/23 | 11:33 AM | (512) 615-2636 |
| 4/15/23 | 2:50 PM | (512) 615-2648 |
| 4/17/23 | 11:44 AM | (512) 615-2636 |
| 4/17/23 | 2:09 PM | (512) 615-2636 |
| 4/17/23 | 4:01 PM | (512) 615-2648 |
| 4/17/23 | 5:23 PM | (512) 615-2636 |
| 4/18/23 | 11:17 AM | (512) 615-2636 |
| 4/18/23 | 3:00 PM | (512) 615-2636 |
| 4/18/23 | 5:49 PM | (512) 615-2648 |
| 4/18/23 | 7:52 PM | (512) 615-2648 |
| 4/19/23 | 11:12 AM | (512) 615-2648 |
| 4/19/23 | 5:55 PM | (512) 615-2636 |
| 4/20/23 | 9:04 AM | (512) 615-2636 |
| 4/20/23 | 12:06 PM | (512) 615-2648 |
| 4/20/23 | 3:37 PM | (512) 615-2636 |
| 4/20/23 | 6:23 PM | (512) 615-2636 |
| 4/21/23 | 11:16 AM | (512) 615-2636 |
| 4/21/23 | 1:39 PM | (512) 615-2648 |
| 4/25/23 | 7:07 PM | (512) 615-2636 |
| 4/26/23 | 11:32 AM | (512) 615-2636 |
| 4/26/23 | 5:11 PM | (512) 615-2636 |
| 4/26/23 | 7:23 PM | (512) 615-2648 |
| 4/27/23 | 1:52 PM | (512) 615-2636 |
| 4/27/23 | 4:19 PM | (512) 615-2648 |
| 4/28/23 | 11:15 AM | (512) 615-2648 |
| 4/28/23 | 3:49 PM | (512) 615-2648 |
| 4/28/23 | 4:59 PM | (512) 615-2648 |

| | | |
|---|---|---|
| 4/29/23 | 9:49 AM | (512) 615-2636 |
| 4/29/23 | 12:56 PM | (512) 615-2636 |
| 5/1/23 | 11:30 AM | (512) 615-2636 |
| 5/1/23 | 1:42 PM | (512) 615-2648 |
| 5/1/23 | 1:59 PM | (512) 615-2636 |
| 5/1/23 | 4:47 PM | (512) 615-2648 |
| 5/2/23 | 12:00 PM | (512) 615-2648 |
| 5/2/23 | 2:18 PM | (512) 615-2648 |
| 5/2/23 | 2:18 PM | (512) 615-2648 |
| 5/2/23 | 3:23 PM | (512) 615-2636 |
| 5/2/23 | 6:10 PM | (512) 615-2648 |
| 5/3/23 | 11:57 AM | (512) 615-2648 |
| 5/3/23 | 1:34 PM | (512) 615-2648 |
| 5/3/23 | 3:37 PM | (512) 615-2636 |
| 5/3/23 | 4:03 PM | (512) 615-2648 |
| 5/3/23 | 6:22 PM | (512) 615-2648 |
| 5/3/23 | 6:22 PM | (512) 615-2648 |
| 5/4/23 | 11:14 AM | (512) 615-2636 |
| 5/4/23 | 12:56 PM | (512) 615-2648 |
| 5/4/23 | 12:56 PM | (512) 615-2648 |
| 5/4/23 | 4:22 PM | (512) 615-2636 |
| 5/4/23 | 5:46 PM | (512) 615-2636 |
| 5/4/23 | 6:15 PM | (512) 615-2636 |
| 5/5/23 | 11:14 AM | (512) 615-2636 |
| 5/5/23 | 12:41 PM | (512) 615-2648 |
| 5/5/23 | 2:11 PM | (512) 615-2636 |
| 5/5/23 | 5:44 PM | (512) 615-2648 |
| 5/6/23 | 9:14 AM | (512) 615-2648 |
| 5/6/23 | 12:15 PM | (512) 615-2648 |
| 5/6/23 | 1:51 PM | (512) 615-2648 |
| 5/6/23 | 4:51 PM | (512) 615-2636 |
| 5/8/23 | 9:23 AM | (512) 615-2636 |
| 5/8/23 | 1:02 PM | (512) 615-2648 |
| 5/8/23 | 4:03 PM | (512) 615-2648 |

| | | |
|---|---|---|
| 5/9/23 | 11:41 AM | (512) 615-2636 |
| 5/9/23 | 3:16 PM | (512) 615-2636 |
| 5/9/23 | 6:16 PM | (512) 615-2648 |
| 5/10/23 | 1:06 PM | (512) 615-2636 |
| 5/10/23 | 3:29 PM | (512) 615-2636 |
| 5/10/23 | 7:26 PM | (512) 615-2636 |
| 5/11/23 | 9:02 AM | (512) 615-2648 |
| 5/11/23 | 11:03 AM | (512) 615-2636 |
| 5/11/23 | 4:14 PM | (512) 615-2648 |
| 5/11/23 | 6:12 PM | (512) 615-2636 |
| 5/12/23 | 11:20 AM | (512) 615-2648 |
| 5/12/23 | 3:40 PM | (512) 615-2636 |
| 5/15/23 | 12:19 PM | (512) 615-2648 |
| 5/15/23 | 1:54 PM | (512) 615-2648 |
| 5/15/23 | 5:16 PM | (512) 615-2636 |
| 5/16/23 | 11:20 AM | (512) 615-2648 |
| 5/16/23 | 7:29 PM | (512) 615-2648 |
| 5/17/23 | 12:21 PM | (512) 615-2636 |
| 5/17/23 | 4:02 PM | (512) 615-2636 |
| 5/18/23 | 11:14 AM | (512) 615-2636 |
| 5/18/23 | 2:25 PM | (512) 615-2636 |
| 5/19/23 | 1:26 PM | (512) 615-2648 |
| 5/22/23 | 12:30 PM | (512) 615-2636 |
| 5/22/23 | 3:36 PM | (512) 615-2636 |
| 5/22/23 | 6:07 PM | (512) 615-2636 |
| 5/23/23 | 12:02 PM | (512) 615-2648 |
| 5/23/23 | 1:53 PM | (512) 615-2648 |
| 5/23/23 | 2:56 PM | (512) 615-2636 |
| 5/24/23 | 11:28 AM | (512) 615-2636 |
| 5/24/23 | 2:23 PM | (512) 615-2636 |
| 5/25/23 | 12:04 PM | (512) 615-2648 |
| 5/25/23 | 2:07 PM | (512) 615-2648 |
| 5/25/23 | 6:07 PM | (512) 615-2636 |
| 5/30/23 | 3:37 PM | (512) 615-2648 |

| | | |
|---|---|---|
| 6/2/23 | 12:39 PM | (512) 615-2636 |
| 6/12/23 | 2:54 PM | (512) 615-2636 |
| 6/13/23 | 10:47 AM | (512) 615-2648 |
| 6/15/23 | 9:34 AM | (512) 615-2636 |
| 7/6/23 | 9:51 AM | (512) 615-2636 |
| 7/18/23 | 2:36 PM | (512) 615-2636 |
| 7/28/23 | 1:51 PM | (512) 615-2648 |
| 8/9/23 | 1:18 PM | (512) 615-2636 |
| 8/10/23 | 11:56 AM | (512) 615-2648 |
| 8/10/23 | 12:58 PM | (512) 615-2636 |
| 8/10/23 | 2:00 PM | (512) 615-2636 |
| 8/14/23 | 10:20 AM | (512) 615-2636 |
| 8/15/23 | 2:41 PM | (512) 615-2636 |
| 8/16/23 | 12:21 PM | (512) 615-2636 |
| 8/16/23 | 4:28 PM | (512) 615-2636 |
| 8/19/23 | 3:13 PM | (512) 615-2636 |
| 8/22/23 | 2:34 PM | (512) 615-2648 |
| 9/28/23 | 10:45 AM | (512) 615-2648 |
| 10/3/23 | 6:35 PM | (512) 615-2648 |
| 10/5/23 | 1:57 PM | (512) 615-2648 |
| 10/11/23 | 4:35 PM | (512) 615-2648 |
| 10/11/23 | 7:10 PM | (512) 615-2648 |
| 10/12/23 | 3:18 PM | (512) 615-2648 |
| 10/14/23 | 1:47 PM | (512) 615-2648 |
| 10/16/23 | 2:35 PM | (512) 615-2648 |
| 10/17/23 | 2:38 PM | (512) 615-2648 |
| 10/17/23 | 4:33 PM | (512) 615-2648 |
| 1/6/24 | 11:39 AM | (512) 615-2648 |

**FREEDOM FOREVER'S RESPONSE TO PLAINTIFF'S PRE-SUIT NOTICE OF THE VIOLATIONS**

56.     On or about June 19, 2024, Plaintiff, through counsel, served a pre-suit notice letter to Bright Solar Marketing, LLC regarding the telemarketing violations and again requested that it cease placing telephone calls to Plaintiff.

57.     Plaintiff sent his pre-suit notice letter to Bright Solar Marketing, LLC because that is the only registered business entity that Plaintiff could locate with a public filing and registered name as "Bright Solar."

58.     On July 3, 2024, Plaintiff's counsel was contacted via e-mail by Freedom Forever's "compliance support specialist, Steven Wysong," on behalf of Bright Solar Marketing, LLC. Mr. Wysong advised that Freedom Forever was in receipt of Plaintiff's pre-suit notice letter. He requested Plaintiff's complete telephone number to investigate the calls. Mr. Wysong advised that Plaintiff's telephone number "will not be used to contact your client." Plaintiff's full telephone number was provided to Freedom Forever for it to investigate the calls.

59.     On July 15, 2024, Mr. Wysong wrote undersigned counsel stating "*We* have investigated these claims, and *we* have provable consent for your client's phone number."

60.     To further investigate Plaintiff's claims before filing suit, Plaintiff's counsel requested that Freedom Forever provide its proof of its consent to place continued telemarketing calls to Plaintiff, and that it provide Freedom Forever's relationship to Bright Solar Marketing, LLC since it responded to Plaintiff's pre-suit notice on its behalf.

61.     Freedom Forever did not respond to Plaintiff's counsel and ceased all communication.

62.     Rather than provide any proof of consent or explanation as to how or why Freedom Forever was responding on behalf of Bright Solar Marketing, LLC to Plaintiff's pre-suit notice letter,

on July 23, 2024 at 5:59 p.m. and 6:11 p.m., Plaintiff received a telemarketing call attempting to sell solar panels directly from Freedom Forever. The caller stated he was "Manny" at Freedom Forever.

63.    Freedom Forever's response that Defendants had consent, even if initially true, is not a defense to the internal DNC's claims in this action because Plaintiff revoked any conceivable consent.

64.    Freedom Forever's response that it had "consent for your client's phone number" further demonstrates that the calls placed to Plaintiff were telephonic solicitations, because, if they were not, consent would not be necessary. Freedom Forever's response also evidences that the calls placed by Bright Solar, were on behalf of, or connected to, Freedom Forever.

65.    In Plaintiff's First Amended Complaint, Plaintiff reserved the right to re-join Freedom Forever as a named party defendant in this action pending discovery showing the extent of Freedom Forever's control, ratification, approval of, or participation in, the telemarketing calls at-issue in this action.

66.    Plaintiff is now filing this Second Amended Complaint because discovery obtained to-date evidences that the calls placed by Bright Solar were all placed on behalf of, for the benefit of, and with the express permission, approval, and consent of, Freedom Forever.

67.    Freedom Forever is the controlling parent company of Bright Solar and Bright Solar Marketing, LLC.

68.    Additionally, Freedom Forever called Plaintiff directly on one or more occasions despite telling Bright Solar, its agent, to stop calling him.

## FREEDOM FOREVER IS LIABLE FOR ALL THE CALLS EVEN IF THEY WERE PLACED BY BRIGHT SOLAR

69.     Because Freedom Forever responded to Plaintiff's pre-suit notice letter on behalf of Bright Solar, and because Freedom Forever contends that it had consent for all the calls, it demonstrates that the calls were placed for or on behalf of Freedom Forever, that Bright Solar and Freedom Forever  are associated, affiliated, jointly and commonly operated, and related companies, that an agency relationship exists between them, and that the "provable consent" that Freedom Forever claims it had is the basis for its and/or Bright Solar's mistaken belief that they were not required to honor Plaintiff's do not call requests.

70.     In this litigation, Bright Solar's counsel, who is also the same counsel for Freedom Forever, obtained and produced to Plaintiff the purported evidence that Bright Solar contends supports an express consent defense to call Plaintiff.

71.     Freedom Forever's principal address in its corporate filings is the same address as Bright Solar's sole owner and manager (ie: 43445 Business Park Drive #104, Temecula, CA, 92590).

72.     Any attempt by Bright Solar or Freedom Forever to separate or distance themselves from each other would be a charade.

73.     Undersigned counsel's investigation has revealed that Freedom Forever and Bight Solar are related, associated, affiliate, parent/subsidiary, or partner companies. They engage in a common and coordinated marketing effort for home solar solutions.

74.     Bright Solar's website states that it is operated by "Freedom Solar."

75.     Freedom Forever holds itself out to the public as, and as the operator of, Bright Solar, and the company operating as Bright Solar Marketing. Bright Solar Marketing, LLC has stated in discovery that it has no operations of its own – the Defendant Bright Solar is the operation.

76.    Freedom Forever responded to Plaintiff's pre-suit notice letter on behalf of Bright Solar, and it responded to Plaintiff's discovery requests in this case on behalf of Bright Solar Marketing, LLC – the "Bright Solar Marketing" registered company. Nevertheless, the Defendant Bright Solar is the company that actually carries on operations as "Bright Solar Marketing."

77.    Bright Solar Marketing, LLC's sworn interrogatories in this case state that Freedom Forever is the parent company of Bright Solar Marketing, LLC. It is believed that Freedom Forever is also the parent company of Bright Solar.

78.    Bright Solar Marketing, LLC's sworn interrogatories in this case identify Taylor Tilby, who is the Appointment Operations Manager for Bright Solar, as a person with knowledge of the relevant facts and issues in this case.

79.    Bright Solar Marketing, LLC's sworn interrogatories in this case state that Bright Solar is the proper defendant in this case based on Plaintiff's allegations.

80.    Bright Solar Marketing, LLC's sworn interrogatories in this case demonstrate that Bright Solar does business as, and holds itself out to the public as, Bright Solar – this is consistent with Defendants' business practice of identifying themselves as Bright Solar in the calls placed to Plaintiff on behalf of Freedom Forever.

81.    Bright Solar places the calls to potential customers for and on behalf of Freedom Forever, and Freedom Forever performs the physical solar installation services.

82.    In a prior TCPA litigation against Bright Solar Marketing LLC, its corporate representative, Steven Wyson, the same Mr. Wyson who responded to Plaintiff's pre-suit complaint on behalf of Bright Solar and Freedom Forever, testified:

        i.    *"I work at Freedom Forever"* (but was also the corporate representative of Bright Solar Marketing, LLC)

    ii.   He previously *"worked for Bright Solar"*

   iii.   *"Freedom Forever is a solar installation company"*

   iv.   He *"reviews appointments made by the call center"*

    v.   That *"**Bright Solar is the call center for Freedom Forever**"*

   vi.   *"**Freedom Forever [does not] use any call centers other than ones associated with Bright Solar**"*

  vii.   *"**Bright Solar Marketing [does not] make appointment setting calls from their call centers for any company other than Freedom Forever**"*

 viii.   Bright Solar has *"more than 20 . . . call center employees"*

   ix.   *"Bright Solar Marketing makes outbound calls"*

    x.   *"Bright Solar Marketing gets leads from . . . one source . . . High Roller Marketing"*

   xi.   *"to get information about Bright Solar's . . . telemarketing . . . Bright Solar would have to make a request to [its telephone dialer system used to make outbound calls]*

  xii.   He personally is able to, and did, *"query [and] download call logs . . .[for] the number of call attempts . . .[by] logging in"*

 xiii.   *"consumers can request during phone calls that they be placed on the do not call list, and the agents should be placing them on that list."*

83.    Another Freedom Forever employee, Weldon Fortenberry III, previously testified as a corporate representative on behalf of Bright Solar Marketing, LLC:

---

i. In response to the question "Have you ever worked for Bright Solar Marketing?, that "*Yes. It's Freedom Forever or Freedom Solar Services d/b/a Bright Solar Marketing*"

ii. *"There [is no] other company . . . that does business as Bright Solar Marketing"*

iii. *His W-2 is from "Freedom Solar d/b/a Bright Solar"*

iv. *Bright Solar at one time had "north of 300" call center agents;*

v. *"Bright Solar [has] two call centers"*

vi. *"High Roller Marketing [does not] supply leads to any companies other than Bright Solar"*

vii. *Bright Solar and Freedom have the same single "CEO for both companies"*

viii. *[No] other company other than Bright Solar or High Roller have any involvement in the outbound calls made by Bright Solar"*

ix. In response to the question "How is Bright Solar Marketing, LLC . . . different than Freedom Solar Services doing business as Bright Solar marketing? that "I mean, my understanding, it's the same . . . ."

84. Based on the discovery and investigation known to-date, it is apparent that Bright Solar and Freedom Forever operate together, are alter-egos of one another, and for all intents and purposes hold themselves out as the same company.

85. Investigation has revealed that Defendants have been the subject of prior (and on-going) TCPA litigation involving them sending unwanted telemarketing calls, further demonstrating a common practice of continued and on-going violations.

86.    These on-going, repeated violations and separate litigations show that Defendants chose to ignore or disregard Plaintiff's requests to no longer be contacted, and Defendants' willful, knowing, and purposeful disregard for the TCPA rules designed to protect privacy for us all, and its knowing failure to have adequate Internal DNC rules and procedures that would have prevented further calls to Plaintiff and others like Plaintiff.

87.    These on-going violations and separate common litigations further demonstrate the need for judicial intervention and judicial relief in the form of an injunctive order to stop the continued violations.

88.    Without an enforceable injunctive order, Defendants' violations are capable of repetition, and are repeating, and they will be free to continue their violations.

89.    Discovery will reveal the full scope of their relationship, but investigation has revealed that Bright Solar is the sole entity or company entity that places calls for, and on behalf of, Freedom Forever (it's parent), to perform solar installation services.

90.    At a minimum, Bright Solar is an actual and apparent agent of Freedom Forever, and all acts, omissions, and/or knowledge of Bright Solar is imputed to Freedom Forever.

91.    All calls placed by or on behalf of Freedom Forever were placed within the course and scope of Bright Solar's relationship with Freedom Forever.

92.    Defendants directly, individually, jointly, and/or in concert with another, or through other persons, entities, agents, or franchisees, acting on their behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the calls that are the subject matter of this Second Amended Complaint.

93.     Both Defendants are liable for the telemarketing calls because they each authorized and/or facilitated these calls and profited off the leads and customers generated from calls, and intended to profit off the leads, even if a customer did not ultimately make a purchase.

94.     Freedom Forever is liable for the calls that violate the TCPA even if it did not personally transmit the calls because it, individually, and collectively with Bright Solar, took steps to cause the telemarketing calls to be made, and because the telemarketing calls were made pursuant to their actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

95.     Defendants, individually and/or collectively, have absolute control over whether, and under what circumstances, they accept leads and monies from potential customers.

96.     Defendants, individually and/or collectively, had the ability and/or right to control the method and scope of the telemarketing campaigns sent to Plaintiff and the Class members, including whether telemarking could be sent at all.

97.     Defendants had the ability and/or right to control the timing and approve, write, and review the content of the telemarketing campaigns sent to Plaintiff and the Class members.

98.     Plaintiff reasonably believed that the calls were sent with the permission, authority, and instruction to conduct the activity on behalf of Bright Solar and Freedom, because the telemarketers identified Bright Solar and Freedom Forever as the companies who were calling from the telephone numbers that called Plaintiff, respectively.

99.     Defendants provide substantial participation in, and support for, their marketing activities.

100.    Given Freedom Forever's right to control over, and participate in, the telemarketing campaigns at issue, and/or its ratification of the campaigns, it is directly and vicariously liable for the violations alleged herein. All of the calls placed by Bright Solar are on behalf of, and for the direct benefit of, Freedom Forever.

101.    Defendants have in place formal relationships for which each of them derives financial and economic benefits from the calls, the extent of which will be the subject of discovery.

102.    Defendants have in place integrated systems or shared information and/or lead lists, so they can access the records of people or the potential customers/leads they call, including call records, opt-in requests, and opt-out requests.

103.    Defendants have access to the sales and customers generated by the telemarketing at issue in this case.

104.    By accepting these leads, Defendants "manifest[ed] assent or otherwise consent[ed]…" for the sender of the calls to act on their behalf, as described in the Restatement (Third) of Agency.

105.    Despite being on notice of the violations, including various litigations against them involving the same or substantially similar complaints of calls to other consumers that are at issue here, Defendants continue to conduct their telemarketing campaign.

106.    For example, Bright Solar and Freedom Forever had actual notice of the violations, including Plaintiff's counsel's pre-suit notice and direct communications with Freedom Forever's counsel, yet it continued to engage in, failed to stop, implement proper procedures, or provide instruction, notices, or directives to its agents to stop calling, and otherwise ratified the violative practices by continuing to enjoy, and intending to accept, the benefits that originated from them.

107.    Defendants failed to keep, maintain, implement, coordinate, and/or enforce policies and procedures and training to ensure compliance with the TCPA, and/or provide adequate oversight and training to ensure compliance with any policies it maintained.

108.    Defendants were part of a common enterprise and had a community of interest in promoting Defendants' businesses pursuant to telephone telemarketing.

109.    As a result, Plaintiff's injury is indivisible, and the Defendants are jointly and collectively liable for the resulting damage to Plaintiff caused by the calls.

110.    Defendants acted in concert when they arranged to solicit and accept customers derived from illegal calls.

111.    Defendants were part of a common design to solicit potential customers for the Defendants' business.

112.    On information and belief, the Defendants do not maintain a written policy, available upon demand, for maintaining a do-not-call list, as required by 47 C.F.R. §64.1200(d)(1).

113.    On information and belief, the Defendants do not train their employees or agents who are engaged in telemarketing on the existence and use of any do-not-call list, as required by 47 C.F.R § 64.1200(d)(2).

114.    Defendants failed to place Plaintiff on their do-not-call list, despite his requests to no longer be called. Instead, Defendants continued to place calls to Plaintiff's telephone, in violation of 47 C.F.R § 64.1200(d)(3).

115.    Plaintiff has received over one hundred calls from or on behalf of the Defendants.

116.    Defendant's calls also violated § 302.101, § 304.052, and§ 305.053(a) of the Texas Business & Commerce Code.

**<u>Plaintiff Suffered Injury and Damages</u>**

117.    Plaintiff was damaged by Defendants' calls.

118.    The telemarketing at issue caused Plaintiff and putative Class Members actual harm and actual damages. In addition to using their cellular data, storage, and battery life, they suffered invasion of privacy, aggravation, annoyance, frustration, distraction, and their seclusion was intruded upon, forcing them to divert attention away from their work, home life and other activities, inconvenience, wasted time, risk of future harm, causing disruption to their work, sleep, and other activities, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited and unwanted calls.

119.    Plaintiff and Class Members lost time away from work, family, and personal activities, and suffered aggravation, because of Defendant's unsolicited telemarketing.

120.    For example, apart from forcing Plaintiff to spend time trying to get the telemarketing to stop, investigating the source of the calls, and investing time researching and hiring counsel, Plaintiff received some of the unsolicited calls while he was sharing personal and intimate time with his family. This caused Plaintiff on multiple occasions to stop to check his phone and waste time speaking with Defendant's representatives to investigate the calls and to confirm they were not for an emergency purpose, causing specific injury, trespass, intrusion, and disruption onto Plaintiff's personal and daily life.

121.    The calls are a disruptive nuisance.

122.    Because Plaintiff and Class Members continued to received telemarketing calls from Defendants after they requested that Defendants stop, revoking any conceivable consent, and because Defendants continued to call Plaintiff despite them being on notice of the violations and

having engaged legal counsel to address them, it demonstrates the need for judicial intervention and injunctive relief to enjoin any continued and future harm.

123.    Defendants' ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and Class Members.

124.    Plaintiff and Class Members will suffer irreparable harm if Defendants are permitted to continue their practices of violating the TCPA.

125.    The injuries that the Plaintiff and Class Members will suffer if Defendants are not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendants will suffer if they are enjoined from continuing this conduct.

126.    The public interest will be served by an injunction prohibiting Defendants from continuing to engage in the unlawful practices described herein.

127.    Accordingly, Plaintiff and Class Members seek an injunction requiring Defendants to implement policies and procedures to secure and maintain express written consent before engaging in any telemarketing, to follow such consent requirements, to honor opt-out requests, and to otherwise cease continued violations of the TCPA.

## **CLASS REPRESENTATION ALLEGATIONS**

128.    Plaintiff brings this class action under Rules 23(a) and 23(b)(2) & (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and of a similarly situated "Class" or "Class Members" defined as:

> **Internal DNC Class: All persons within the United States who, within the four years prior to the filing of the original Complaint through the date of class certification, who (1) received two or more phone calls within any 12- month period, (2) regarding Defendants' property, goods, and/or services, (3) to said person's residential telephone number, (4) after requesting that either Defendant or Defendants' vendor's "stop" or making similar request**

**Texas § 302.101 Class: Since within the four years prior to the filing of the original Complaint through the date of certification, Plaintiff and all residents of the State of Texas to whose telephone number Defendants placed (or had placed on their behalf) a telephone solicitation when Defendants did not hold a registration certificate as required by Tex. Bus. & Com. Code § 302.101.**

**Texas § 305.053 Class: Since within the four years prior to the filing of the original Complaint through the date of certification, Plaintiff and all residents of the State of Texas, to whose telephone number Defendants: (1) placed (or had placed on their behalf) a call in violation of 47 U.S.C. § 227 or a regulation adopted under that provision.**

129.    Excluded from the Classes is any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

130.    This action has been brought and may properly be maintained as a class action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

131.    **Numerosity**: At this time Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendants' conduct consisted of calls placed to cellular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

132.    Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendants' records, including, but not limited to Defendants' call logs and marketing records.

133.    Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

134.    **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

a.    Whether Defendants, or persons or entities on their behalf, initiated telemarketing phone calls to Plaintiff and Class members;

b.    Whether Defendants can meet their burden of showing that it had and maintained prior express written consent to place such phone calls;

c.    Whether Defendants failed to honor Plaintiff's and Class Members' do not call requests;

d.    How Defendants obtained the numbers of Plaintiff and Class members;

e.    Whether Defendants violated 47 C.F.R § 64.1200(c) and (d) and its regulations;

f.    Whether Defendant willfully or knowingly violated the TCPA or the rules prescribed under it;

g.    Whether Defendant violated Texas Business and Commerce Code,

h.  Whether Defendants knowingly or intentionally violated Texas Business and Commerce Code,

i.  Whether Defendants violated the privacy rights of Plaintiff and members of the class;

j.  Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney's fees and costs for Defendants' acts and conduct;

k.  Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in unlawful conduct; and

l.  Whether Plaintiff and the Class are entitled to any other relief.

135.   One or more questions or issues of law and/or fact regarding Defendants' liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

136.   **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

137.   Plaintiff and members of the Class each received at least two phone calls within a twelve month period, promoting the Defendants' business, which Defendants placed or caused to be placed to Plaintiff and the members of the Class.

138.   **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in litigation in TCPA litigation and class action litigation.

139.    **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendants by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

140.    **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendants' ongoing violations of the TCPA, and to order Defendants to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted calls.

**COUNT I**
**VIOLATIONS OF 47 U.S.C. § 227(c) AND C.F.R. § 64.1200(d)**
**(Against Freedom Forever)**

141.    Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 140 against Freedom Forever of this Second Amended Complaint as if set forth verbatim herein.

142.    47 C.F.R. § 64.1200(d), in relevant part, provides: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) *Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request

not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an <u>affiliated</u> entity.

143.    Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

144.    Unlike section 64.1200(c), a cause of action under 64.1200(d) does not require a plaintiff to have first registered their number on the National Do-Not-Call registry or request to be placed on defendant's internal do-not-call list. The TCPA makes it unlawful for any person to … initiate "any call for telemarketing purposes to a residential telephone subscriber unless" the caller "has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls[.]" *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-cv-03309-JD, 2022 U.S. Dist. LEXIS 52650, at *20-21 (N.D. Cal. Mar. 23, 2022) (citing 47 U.S.C. § 227(c)(2); 47 C.F.R. § 64.1200(d).

145.    Nonetheless, Plaintiff and other members of the Internal DNC Class members made requests to Defendant and/or Defendant's telemarking agents not to receive telemarketing calls from Defendant.

146.    Defendant failed to honor Plaintiff and the Internal DNC Class members opt-out requests.

147.    Defendant violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

148.    Pursuant to section 227(c)(5) of the TCPA, Plaintiffs and the IDNC Class members are entitled to an award of $500.00 in statutory damages for each phone call placed by Defendant.

149.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the IDNC Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, Freedom Forever as set forth in the Prayer for Relief below.

**COUNT II**
**VIOLATIONS OF TEXAS BUSINESS AND COMMERCE CODE, § 302.101**
**(Against Freedom Forever)**

150.     Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 140 against Freedom Forever of this Second Amended Complaint as if set forth verbatim herein.

151.     Defendant failed to obtain a registration certificate from the Office of the Secretary of State of Texas pursuant to violated § 302.101 of the Texas Business and Commerce Code.

152.     Defendant and/or agent's on Defendant's behalf placed telephone solicitations to Plaintiff's and the Texas § 302.101 Class Members' telephone numbers.

153.     Defendant's telephone solicitations were made from a location in Texas or to Plaintiff and the Texas § 302.101 Class Members located in Texas.

154.     Plaintiff and the Texas § 302.101 Class Members are entitled to an award of up to $5,000 for each violation and all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

155.     Section 302.302(d) expressly provides "[t]he party bringing the action also is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees."

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, Freedom Forever, as set forth in the Prayer for Relief below.

**COUNT III**
**VIOLATIONS OF TEXAS BUSINESS AND COMMERCE CODE, § 305.053**
**(Against Freedom Forever)**

156.    Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 140 against Freedom Forever of this Second Amended Complaint as if set forth verbatim herein.

157.    Defendant placed in a 12-month period at least one and many times more than one telemarketing telephone calls to Plaintiff's and the Texas § 305.053 Class Members' respective telephone numbers.

158.    Each of these calls violated 47 U.S.C. § 227 or a regulation adopted under that provision.

159.    Wherefore, Plaintiff and the Texas § 305.053 Class Members are entitled to, and request:

   a.    A permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305;

   b.    The greater of $500 for each violation or Plaintiff's actual damages (*see* Tex. Bus. & Com. Code §304.053(b);

   c.    The greater of $1,500 for each violation or Plaintiff's actual damages for each call made knowingly or intentionally (*see* Tex. Bus. & Com. Code §304.053(c).

**COUNT IV**
**VIOLATIONS OF 47 U.S.C. § 227(c) AND C.F.R. § 64.1200(d)**
**(Against Bright Solar)**

160.    Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 141 against Bright Solar of this Second Amended Complaint as if set forth verbatim herein.

161.    47 C.F.R. § 64.1200(d), in relevant part, provides: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1)*Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone <u>subscriber</u> not to receive calls from that person or entity, the person or entity must record the request and place the <u>subscriber</u>'s name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential <u>subscriber</u>'s do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a <u>consumer</u>'s prior express permission to share or forward the <u>consumer</u>'s request

not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an <u>affiliated</u> entity.

162.    Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

163.    Unlike section 64.1200(c), a cause of action under 64.1200(d) does not require a plaintiff to have first registered their number on the National Do-Not-Call registry or request to be placed on defendant's internal do-not-call list. The TCPA makes it unlawful for any person to … initiate "any call for telemarketing purposes to a residential telephone subscriber unless" the caller "has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls[.]" *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-cv-03309-JD, 2022 U.S. Dist. LEXIS 52650, at *20-21 (N.D. Cal. Mar. 23, 2022) (citing 47 U.S.C. § 227(c)(2); 47 C.F.R. § 64.1200(d).

164.    Nonetheless, Plaintiff and other members of the Internal DNC Class members made requests to Defendant not to receive telemarketing calls from Defendant.

165.    Defendant failed to honor Plaintiff and the Internal DNC Class members opt-out requests.

166.    Defendant violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

167.    Pursuant to section 227(c)(5) of the TCPA, Plaintiffs and the IDNC Class members are entitled to an award of $500.00 in statutory damages for each phone call placed by Defendant.

168.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the IDNC Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, Bright Solar as set forth in the Prayer for Relief below.

## COUNT V
### VIOLATIONS OF TEXAS BUSINESS AND COMMERCE CODE, § 302.101
#### (Against Bright Solar)

169.    Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 140 against Bright Solar of this Second Amended Complaint as if set forth verbatim herein.

170.    Defendant failed to obtain a registration certificate from the Office of the Secretary of State of Texas pursuant to violated § 302.101 of the Texas Business and Commerce Code.

171.    Defendant placed telephone solicitations to Plaintiff's and the Texas § 302.101 Class Members' telephone numbers.

172.    Defendant's telephone solicitations were made from a location in Texas or to Plaintiff and the Texas § 302.101 Class Members located in Texas.

173.    Plaintiff and the Texas § 302.101 Class Members are entitled to an award of up to $5,000 for each violation and all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

174.    Section 302.302(d) expressly provides "[t]he party bringing the action also is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees."

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, Bright Solar, as set forth in the Prayer for Relief below.

**COUNT VI**
**VIOLATIONS OF TEXAS BUSINESS AND COMMERCE CODE, § 305.053**
**(Against Bright Solar)**

175.    Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 140 against Bright Solar of this Second Amended Complaint as if set forth verbatim herein.

176.    Defendant placed in a 12-month period at least one and many times more than one telemarketing telephone calls to Plaintiff's and the Texas § 305.053 Class Members' respective telephone numbers.

177.    Each of these calls violated 47 U.S.C. § 227 or a regulation adopted under that provision.

178.    Plaintiff and the Texas § 305.053 Class Members are entitled to:

    d.    A permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305;

    e.    The greater of $500 for each violation or Plaintiff's actual damages (*see* Tex. Bus. & Com. Code §304.053(b);

    f.    The greater of $1,500 for each violation or Plaintiff's actual damages for each call made knowingly or intentionally (*see* Tex. Bus. & Com. Code §304.053(c).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, against Defendants, individually and jointly, for:

a.  An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

b.  Statutory damages of $500 per call, per violation, of the TCPA;

c.  Willful damages at $1,500 per call, per violation, of the TCPA;

d.  A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(l)(A)(iii);

e.  An injunction requiring Defendants to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list;

f.  Plaintiff and each member of the § 302.302 be awarded no more than $5,000 for each violation pursuant to § 302.302 of the Texas Business & Commerce Code.

g.  Plaintiff and each member of the §305.053 Class be awarded $500.00 for each violation of §305.053;

h.  Plaintiff and each member of the §305.053 Class be awarded $1,500.00 for each knowing or intentional violation of §305.053;

i.  An order declaring that Defendants' actions, as set out above, violate the Texas Business and Commerce Code because they are a violation of 47 U.S.C. §§ 227 (c), 47 C.F.R. §§64.1200(c)(4) and/or 47 C.F.R. § 64.1601(e);

j.  An order declaring that Defendants' actions, as set out above, violate Tex. Bus. & Com. Code § 302.101, and §305.053.

k.  An award of statutory damages under the Texas Business and Commerce Code;

l.  An award of treble damages;

m.  Reasonable attorney's fees and costs, as permitted by applicable law including under the FRCP 54 and FRCP 23, and decisional law interpreting same; and

n.  Such further and other relief as this Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all appropriate claims.

Dated: August 01, 2025

> /s/ Joshua H. Eggnatz
> Joshua H. Eggnatz, Esq.
> Fla. Bar. No.: 0067926
> **EGGNATZ | PASCUCCI**
> 7450 Griffin Road, Suite 230
> Davie, FL 33314
> Tel: (954) 889-3359
> Fax: (954) 889-5913
> JEggnatz@JusticeEarned.com
> SGizzie@JusticeEarned.com
>
> *Attorney for Plaintiff*
>
> Chris R. Miltenberger, Esq.
> Texas Bar Number: 14171200
> **The Law Office of Chris R. Miltenberger, PLLC**
> 1360 N. White Chapel, Suite 200
> Southlake, TX 76092
> 817-416-5060 (office)
> 817-416-5062 (fax)
> chris@crmlawpractice.com
>
> *Designated as Lead Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of August 2025 I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Western District of Texas and served a true and correct copy thereof on all counsel of record using the CM/ECF System.

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz

## **SERVICE LIST**

William J. Akins
State Bar No. 24011972
**PIERSON FERDINAND LLP**
2021 Guadalupe Street, Suite 260
Austin, Texas 78701
Telephone: (214) 924-9504
william.akins@pierferd.com

Barry Goheen (*Pro Hac Vice*)
**PIERSON FERDINAND LLP**
100 Mount Paran Ridge
Atlanta, GA 30327-3561
Tel: (404) 703-3093
barry.goheen@pierferd.com

*Counsel for Defendant*